IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **MICHAEL D. GRAY** | **PLAINTIFF/** |
| | **COUNTER DEFENDANT** |
| | |
| v. | Civil No. 1:10-cv-00506-HSO-JMR |
| | |
| **CITY OF GAUTIER, MISSISSIPPI,** | |
| **TOMMY FORTENBERRY, and** | **DEFENDANTS/** |
| **SIDNEY RUNNELS** | **COUNTERCLAIMANTS** |

### MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is a Motion for Summary Judgment [34] filed by Defendants City of Gautier, Mississippi, its Mayor Tommy Fortenberry, and former City Manager, Sidney Runnels.  Plaintiff Michael Gray has filed a Response [41], and Defendants a Reply [44].  Plaintiff has also filed a Motion for Summary Judgment [36].  Defendants have filed a Response [39], and Plaintiff a Reply [45].  After consideration of the parties' submissions, the record, the relevant legal authorities, and for the reasons discussed below, the Court finds that Defendants' Motion for Summary Judgment [34] should be granted, and that Plaintiff's Motion for Summary Judgment [36] should be denied.

I. BACKGROUND

Plaintiff's Complaint alleges that the City of Gautier, Mayor Fortenberry, and former City Manager Runnels ("Defendants"), denied him due process and defamed him when the City terminated him as the Fire Chief after fifteen years in the position. Pl.'s Compl. [1] at pp. 3-4. Plaintiff also asserts promissory estoppel and breach of implied contract claims against all Defendants, along with a malicious interference with employment claim against Runnels. Id. at pp. 1, 3.

According to Defendants, Plaintiff was fired for claiming his ex-wife, Ava, as his spousal beneficiary on the City's health insurance plan. Defs.' Answer [8] at pp. 4-5. The City's plan only permitted spouses to be added as beneficiaries if they were legally married to the insured employee. Plan Document [36-4] at p. 4, Ex. 8 to CSC Hearing Tr. [36-3]. The City took the position that Plaintiff committed fraud and misappropriated City funds by adding his ex-wife to the City's plan. Letter [34-10], Ex. 10 to Defs.' Mot. for Summ. J. [34]; Test. of Sidney Runnels, Civil Service Commission (CSC) Hearing Tr. [36-3] at pp. 40-42, Ex. C to Pl.'s Mot. for Summ. J. [36]. Plaintiff does not dispute that he represented that Ava was his wife, or that he named her as his spouse on the City's plan. Pl.'s Resp. [41] at pp. 1-2. Nor does he contest that the City provided health insurance coverage for Ava for six years, while she was not his wife, and that this coverage cost the City $26,139.30 in medical insurance premiums and $112,302.90 in medical treatment costs. Dep. of Michael Gray [41-2] at pp. 29-32, 69, 72-73, Ex. B to Pl.'s Resp. [41]. Plaintiff contends, however, that the City was wrong to accuse him of fraud or to report to

2

the media that he was accused of fraud, when he did not purposefully commit any wrongdoing. Pl.'s Compl. [1] at pp. 2-3.

Plaintiff originally added Ava as a beneficiary to his health insurance policy with the City in 1996. Pl.'s Resp. [41] at p. 2. He removed her after their divorce in 1988. *Id.* The two never remarried. According to Plaintiff, they later reconciled, and this fact was known to City officials. Dep. of Tommy Fortenberry [36-6] at pp. 42-44, Ex. E [36-6] to Pl.'s Mot. for Summ. J. [36]; Pl.'s Resp. [41] at p. 14; Dep. of Michael Gray [41-2] at p. 47. Plaintiff contends that he and Ava tried to remarry in the Catholic Church, but their priest would not remarry them because their marriage had not been formally annulled by the Church. Pl.'s Resp. [41] at p. 2; Dep. of Michael Gray [41-2] at pp. 32-33, 41, 47. He contends that he explained the situation to Kathy Burlison, a City Clerk who handled the City's health insurance matters. Pl.'s Resp. [41] at pp. 2, 14; Dep. of Michael Gray [41-2] at pp. 32-41, 47-48; Dep. of Tommy Fortenberry [36-6] at p. 104. He asked Burlison if, under the circumstances, he could re-enroll Ava as a spousal beneficiary on the City's plan. Pl.'s Reply [45] at p. 1. According to Plaintiff, Burlison told him that he could do so. *Id.* at pp. 1-4. Plaintiff argues that he relied on Burlison's advice and intended no wrong. *Id.*

Burlison is no longer employed by the City, and her testimony is not in the record. Plaintiff has submitted the affidavit of Victor Walsh, who was employed by the City's plan administrator. Aff. of Victor Walsh [41-5], Ex. D to Pl.'s Resp. [41]. He states that he remembers discussing Plaintiff's request to re-enroll Ava with

3

Burlison in 2003.  *Id.*  He does not, however, state that Plaintiff was given permission to add Ava as his beneficiary.  *Id.*  Plaintiff testified that if he had known that he was doing something improper by enrolling Ava in 2003, he would have obtained a marriage certificate.  Dep. of Michael Gray [41-2] at p. 48.

There is evidence in the record that Plaintiff and Runnels had disagreements at work shortly before Plaintiff's termination.  Dep. of Tommy Fortenberry [36-6] at pp. 38-39.  Plaintiff contends that he was fired by Runnels because of a personal grudge, and not because he added Ava to his policy.  Dep. of Michael Gray [41-2] at pp. 106-07.  The record reflects that Runnels approached Plaintiff in August 2009, and asked him if he was married.  *Id.* at pp. 58-60; Test. of Sidney Runnels, CSC Hearing Tr. [36-3] at p. 45.  Runnels had apparently learned through other sources that Plaintiff was not legally married.  Test. of Sidney Runnels, CSC Hearing Tr. [36-3] at pp. 90-92.  Plaintiff maintains that he did not answer Runnels' inquiry about his marital status.  Dep. of Michael Gray [41-2] at pp. 55-56.  Runnels testified that Plaintiff told him that he was married.  Test. of Sidney Runnels, CSC Hearing Tr. [36-3] at p. 45.  When Plaintiff realized that Runnels was probably asking about his marital status because Ava had been added as his beneficiary on the City's health insurance plan, he quickly married Ava in a civil ceremony on September 4, 2009.  Dep. of Michael Gray [41-2] at pp. 58-59.

Runnels conducted an investigation into Plaintiff's marital status and ordered an insurance audit.  Memo [36-7], Ex. 8 to Dep. of Tommy Fortenberry [36-6]; Test. of Sidney Runnels, CSC Hearing Tr. [36-3] at pp. 64-65, 88.  He confirmed

4

through the investigation that Plaintiff was not legally married to Ava. Test. of Sidney Runnels, CSC Hearing Tr. [36-3] at pp. 89-91. Runnels notified Plaintiff in a letter dated October 15, 2009, that he was suspended, and that he intended to terminate him. Letter [36-7], Ex. 10 to Dep. of Tommy Fortenberry [36-6]. Runnels' letter accused Plaintiff of "fraudulently enroll[ing] Ava Gray on the City's Medical Insurance at a time when she was not recognized under the laws of the State of Mississippi as [his] Spouse." *Id.* Runnels also reported Plaintiff to the State Auditor's Office for fraud. Letter [36-7], Ex. 9 to Dep. of Tommy Fortenberry [36-6].

After receiving Runnels' October 15, 2009, letter, Plaintiff retained an attorney, who wrote Runnels and requested "a full pre-termination hearing as soon as possible." Letter [34-11], Ex. 11 to Defs.' Mot. for Summ. J. [34]. Runnels arranged a meeting. Letter [34-12], Ex. 12 to Defs.' Mot. for Summ J. [34]. On October 23, 2009, Plaintiff and his attorney met with Runnels, Mayor Fortenberry, and City Attorney Robert Ramsey. Dep. of Michael Gray [41-2] at p. 81. Runnels mailed Plaintiff a letter that same day informing him that he was terminated, effective immediately, and that he had the right to file a written demand with the City's Civil Service Commission for an investigation and hearing. Letter [34-13], Ex. 13 to Defs.' Mot. for Summ. J. [34].

The day following the pre-termination meeting, and before Plaintiff received his termination letter, it was reported in the media that Plaintiff had been suspended and was facing termination for alleged insurance fraud. Dep. of Michael

5

Gray [41-2] at pp. 77-89.  Mayor Fortenberry was interviewed on the local news, and articles appeared in several local newspapers.  Articles [36-7], Exs. 12 and 14 to Dep. of Tommy Fortenberry [36-6]; Articles [34-14], Ex. 14 to Defs.' Mot. for Summ. J. [34].  The media reported that Plaintiff was suspended after an insurance audit found that he had listed his ex-wife among his dependents on the City's health insurance plan, at a cost to the City of nearly $140,000 over six years.  *Id*.  Mayor Fortenberry informed the media that he did not know if the City would take legal action against Plaintiff, and he stated that Plaintiff had been a good fire chief who would be missed.  Articles  [36-7], Exs. 12 and 14 to Dep. of Tommy Fortenberry [36-6].

Plaintiff requested a Civil Service Commission hearing to challenge his termination, and one was held on December 10, 2009.  Pl.'s Resp. [41] at p. 5.  Plaintiff did not testify.  CSC Hearing Tr. [36-3] at pp. 107-11.  Plaintiff's attorney advised the Commission that Plaintiff would invoke his Fifth Amendment privilege, and would not testify due to the State Auditor's Office's pending fraud investigation.  *Id*. at pp. 107-09.  Following the hearing, the Commission upheld Plaintiff's termination.  *Id*. at 116.

Plaintiff contends that he has repeatedly been rejected for employment since it was publicized that he was accused of insurance fraud.  Pl.'s Resp. [41] at p. 6.  He claims that the City's actions have caused him to live in poverty, to lose his home, and to suffer emotional distress.  Pl.'s Compl. [1] at p. 4; Pl.'s Resp. [41] at p. 7.  He seeks actual and punitive damages.  Pl.'s Compl. [1] at p. 4.

## II. DISCUSSION

A.   Jurisdiction

The Court has original jurisdiction over Plaintiff's Fourteenth Amendment due process claim. 28 U.S.C. § 1331. The Court has supplemental jurisdiction over the state law claims in Plaintiff's Complaint, and those in Defendants' counterclaims, because they are so related to Plaintiff's Fourteenth Amendment claim that they form part of the same case or controversy. 28 U.S.C. § 1367.

B.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "[i]f the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Melton v. Teachers Ins. & Annuity Ass'n of Am.,* 114 F.3d 557, 560 (5th Cir. 1997)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that there exists a genuine issue of material fact. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). In deciding whether summary judgment is appropriate, the Court views facts and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 858 (5th Cir. 2010). However, if the evidence is merely colorable, or is not significantly probative, summary judgment is

appropriate. *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co,* 671 F.3d 512, 516 (5th Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "[M]ere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

"There is no material fact issue unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *RSR Corp.*, 612 F.3d at 858. "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law. An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Hamilton*, 232 F.3d at 477 (citing *Anderson*, 477 U.S. at 248). "The court has no duty to search the record for material fact issues." *RSR Corp.*, 612 F.3d at 858. "Rather, the party opposing summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim." *Id.*

C.   Defendants' Motion for Summary Judgment

   1.   Plaintiff's Fourteenth Amendment Liberty Interest Claim

Plaintiff contends that Defendants "denied [him] liberty without due process of law, [because they] terminated him and made false, defamatory statements about him without giving him adequate notice of the charges being made or a reasonable opportunity to be heard on the matter." Pl.'s Compl. [1] at p. 3. Defendants argue that Plaintiff cannot prevail on this claim because, among other reasons, he was

8

given adequate notice and an opportunity to be heard, both prior to and following his termination.

"If a government employer discharges an individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name, . . . the individual may recover monetary damages under § 1983 for the deprivation of his liberty interest under the Fourteenth Amendment." *Hughes v. City of Garland,* 204 F.3d 223, 226 (5th Cir. 2000). To prevail on his § 1983 liberty interest claim, Plaintiff must show: (1) that he was discharged; (2) that stigmatizing charges were made against him in connection with the discharge; (3) that the charges were false; (4) that he was not provided notice or an opportunity to be heard prior to his discharge; (5) that the charges were made public; (6) that he requested a hearing to clear his name; and (7) that the employer refused his request for a hearing. *Id.* He must produce evidence in support of every element in order to have a cognizable claim. *Id.* at 227.

Plaintiff cannot prevail on his Fourteenth Amendment claim because the City clearly provided him adequate notice and an opportunity to be heard, both prior to his termination, and following his termination at the Civil Service Commission hearing.

      a.    <u>Pre-termination Hearing</u>

The City was required to provide Plaintiff "'some kind of hearing' before termination," which "may consist of no more than a meeting at which the employer states the grounds for dismissal and gives the employee an opportunity for

9

rebuttal." *Caine v. Hardy,* 943 F.2d 1406, 1412 (5th Cir. 1991)(citing *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985)). "[A] brief pre-termination hearing is satisfactory so long as it is coupled with more formal post-termination proceedings . . . ." *Id.* "[T]he pretermination hearing need not definitively resolve the propriety of the discharge. It should be an initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe the charges against the employee are true and support the proposed action." *Loudermill,* 470 U.S. at 545-46; *see Gilbert v. Homar,* 520 U.S. 924, 933 (1997)(stating that the purpose of pre-suspension process, assuming it is even required, is "to assure that there are reasonable grounds to support the suspension.").

　　　Plaintiff was given written notice prior to his termination, explaining the reason for his suspension and proposed termination. Letter [34-10], Ex. 10 to Defs.' Mot. for Summ. J. [34]. He and his attorney were given a pre-termination meeting with Runnels and Mayor Fortenberry. Pl.'s Resp. [41] at pp. 12-13. Plaintiff does not allege that he was unable to offer a rebuttal to the City's allegations during that meeting. The pre-termination meeting on October 23, 2009, satisfied due process, particularly considering that Plaintiff was afforded a post-termination opportunity to clear his name during a formal, public hearing before the Civil Service Commission.

b.     Post-termination Hearing

A post-termination hearing satisfies due process so long as the employee is offered a "hearing providing a public forum or opportunity to clear [his] name." *Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir. 1989). Due process does not require the employer to actually review its decision to discharge the employee. *Id.* at 396.

Plaintiff admits that he was given a post-termination hearing before the Civil Service Commission. Pl.'s Resp. [41] at pp. 12-13. The hearing was open to the public. Dep. of Michael Gray [36-2] at pp. 99-103. Plaintiff's attorney requested and received copies of Plaintiff's employee file and other documents prior to the hearing. *Id.* at pp. 101-02. Plaintiff was able to subpoena and examine witnesses. *Id.* at pp. 102-03. He had the opportunity to put on his case. *Id.* at p. 100. Two Commissioners asked Plaintiff to testify and relate his version of events, but Plaintiff, through his attorney, invoked his Fifth Amendment privilege and elected not to testify. *Id.* at pp. 103-04, 109; CSC Hearing Tr. [36-3] at pp. 107-11.

Plaintiff argues that the hearing was inadequate because he was not advised of his *Miranda* rights. Pl.'s Resp. [41] at p. 13. He argues that because Defendants were "pursuing criminal charges" against him, they should have advised him of his *Miranda* rights at the hearing. *Id.* He also claims that his Fifth Amendment right against self-incrimination was violated, because one of the Commissioners commented on his failure to testify at the hearing, and stated: "Nobody here truly knows the intent of what happened here except what's in that man's heart right

11

there.  So I think it's a fair question to be asked here for one thing.  Mr. Gray is on that day, you know, nobody knows but you." *Id.*; CSC Hearing Tr. [36-3] at p. 109.

In support of his *Miranda* argument, Plaintiff cites one case, *Detro v. Roemer,* 732 F. Supp. 673 (E.D. La. 1990).  In *Detro,* a public university employee alleged that the university violated his Fifth Amendment rights by not *Mirandizing* him during an audit, where the results of the audit led to his termination.  *Id.* at 676.  The plaintiff claimed that he was interrogated in his office, and was not free to leave.  *Id.*  He also alleged that other employees were *Mirandized* and threatened with arrest during the audit.  *Id.*  In denying the defendant's motion to dismiss, the court concluded that the alleged interrogation was arguably a custodial interrogation, requiring that the plaintiff be informed of his *Miranda* rights.  *Id.*  Assuming, as did the court in *Detro*, that the Fifth Amendment can apply in non-criminal proceedings, Plaintiff has not alleged or produced any evidence of compulsion, as was the case in *Detro.*  Plaintiff was not compelled to attend the Civil Service Commission hearing.  He requested both the pre-termination meeting and Commission hearing, and he was free to leave at any time.  The City was not required to *Mirandize* Plaintiff at the hearing.

Plaintiff has cited no case law to support his argument that the Commissioner's comment violated his Fifth Amendment right against self-incrimination.  In civil proceedings, a party is generally free to argue that an adverse inference may be drawn from the other party's failure to testify.  *Baxter v. Palmigiano,* 425 U.S. 308, 318 (1976); *Hinojosa v. Butler,* 547 F.3d 285, 291 (5th

Cir. 2008). Plaintiff was represented by counsel at the hearing in order to advise him of the advantages and disadvantages of invoking his Fifth Amendment privilege. His self-incrimination argument is unavailing.

Based on the foregoing, the Court concludes that Plaintiff cannot meet his summary judgment burden on his federal claim, and that it should be dismissed. Having dismissed Plaintiff's only federal claim, it is in the Court's discretion whether to retain jurisdiction over the remaining state law claims. *Batiste v. Island Records Inc.*, 179 F.3d 217, 227 (5th Cir. 1999). Because discovery is complete, the trial date is approaching, and the remaining claims do not involve any novel or complex issues of state law, the Court will retain jurisdiction over the state law claims on grounds of judicial economy. *See id.*

      2.     <u>Plaintiff's Defamation Claim</u>

Plaintiff contends that Defendants defamed him by publishing to the media that he had been accused of insurance fraud. Pl.'s Compl. [1] at p. 3. To prevail on a defamation claim, a plaintiff must show "(1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged publication to a third party; (3) fault amounting to at least negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Simmons Law Grp., P.A. v. Corp. Mgmt., Inc.*, 42 So. 3d 511, 517 (Miss. 2010). The two competing interests a court balances in a defamation case are those of the plaintiff in protecting his reputation, and the constitutionally guaranteed First Amendment rights of the publisher. *Whitten v.*

13

*Commercial Dispatch Publ'g Co.,* 487 So. 2d 843, 844 (Miss. 1986). "[T]ruth is an absolute defense to a defamation lawsuit in Mississippi." *Journal Publ'g Co. v. McCullough,* 743 So. 2d 352, 360 (Miss. 1999). The plaintiff bears the burden of proving falsity. *Blake v. Gannett Co., Inc.,* 529 So. 2d 595, 603 (Miss. 1988).

Where a plaintiff is a public figure, he cannot recover damages unless he also proves that the alleged defamatory statements were made with actual malice – that is, with knowledge of their falsity or with reckless disregard for whether or not they were false. *Simmons,* 42 So. 2d at 517. A person who becomes involved in any matter of legitimate public interest becomes, in this context, a limited or "vortex" public figure, and must prove actual malice in order to recover for defamation. *Id.* at 517-18. A public figure plaintiff may resist summary judgment only by showing clear and convincing evidence of actual malice in response to the motion. *Johnson v. Delta-Democrat Publ'g Co.,* 531 So. 2d 811, 825 (Miss. 1988).

"Evidence of negligence is not sufficient to establish actual malice." *Simmons,* 42 So. 3d at 518. "[R]eliance on information that later is proven untrue rises only to the level of simple negligence." *Id.* at 519. "[A] person's ill will or personal spite will not, standing alone, support a finding of actual malice . . . . [T]he evidence must show that [the defendant] made a false publication with a high degree of awareness of . . . probable falsity, or must have entertained serious doubts as to the truth of his publication." *Id.* at 518 (citing *Franklin v. Thompson,* 722 So. 2d 688, 692 (Miss. 1998)). "Opinion statements are actionable only if they clearly and unmistakably imply the allegation of undisclosed false and defamatory facts as

14

the basis for the opinion." *Ferguson v. Watkins,* 448 So. 2d 271, 276 (Miss. 1984).

Plaintiff, in his role as Fire Chief, was a limited public figure, and the alleged defamatory statements at issue were published while the City was addressing a matter of public concern.  Plaintiff must therefore prove actual malice.  The media reported that Plaintiff was suspended and faced termination after an insurance audit found that he listed his ex-wife among his dependents on the City's health insurance plan.  It further reported that Plaintiff's actions cost the City nearly $140,000.00 over six years, and that he was being accused of fraud.  Plaintiff cannot meet his summary judgment burden of demonstrating that these statements were actually false, or that they were made with actual malice.

The City's fraud allegation was based on disclosed information, which was itself true; namely, the results of the insurance audit.  Plaintiff does not dispute the findings of the audit.  Therefore, he cannot prove that the facts underlying the City's allegations were false.  Even if he could prove that he did not have the requisite intent to commit fraud, Plaintiff has not offered clear and convincing evidence showing that the City made statements to the media knowing that those statements were false, or with serious doubts about their truthfulness.  Though there is evidence in the record that Plaintiff and Runnels had disagreements at work prior to Plaintiff's termination, the existence of a personal grudge, without more, does not rise to the level of actual malice.  Dep. of Tommy Fortenberry [36-6] at pp. 53-60, 65, 77; Dep. of Michael Gray [36-2] at p. 107.  Plaintiff has not offered clear and convincing proof that the City made statements knowing them to be false,

15

or with reckless disregard for their truth or falsity.  His defamation claim cannot withstand summary judgment.

        3.      <u>Plaintiff's Malicious Interference with Employment Claim</u>

Plaintiff alleges that Runnels is liable to him "for malicious interference with employment based upon his demonstrated personal vindictiveness towards Plaintiff leading to . . . defamatory statements being distributed about Plaintiff, as well as selective enforcement of City policies and procedures." Pl.'s Compl. [1] at p. 3.

Plaintiff cannot prevail on a malicious interference claim for two reasons. First, the Mississippi Torts Claims Act, MISS. CODE ANN. § 11-46-1, *et seq.* (MTCA), requires a plaintiff to submit a notice of claim before filing a tort claim such as this against a municipal entity.  Miss. Code Ann. § 11-46-11(1); *Whiting v. Univ. of S. Mississippi,* 62 So. 3d 907, 915-16 (Miss. 2011).  Defendants raise this procedural bar in their Motion for Summary Judgment, and Plaintiff has not offered proof in connection with his Response that he complied with the MTCA's notice provision. For this reason, Plaintiff's malicious interference claim should be dismissed.  Even absent the procedural bar, Plaintiff could not prevail because he has not alleged that a third party deliberately interfered with his employment relationship. *Nichols v. Tri-State Brick and Tile Co., Inc.,* 608 So. 2d 324, 328 (Miss. 1992). Runnels was the City Manager, and not a third-party to Plaintiff's employment relationship with the City.

    4.    <u>Plaintiff's Breach of Implied Contract and Promissory Estoppel Claims</u>

Plaintiff also advances claims for breach of implied contract and promissory estoppel. Pl.'s Compl. [1] at p. 1. He asserts that the City should be bound by Burlison's alleged statement to him that it was acceptable to add Ava as a spousal beneficiary on the health insurance policy. *Id.* Plaintiff cannot prevail on these claims as a matter of law.

The "minutes are the only evidence of the official actions of a municipality." *JLG Concrete Products Co., Inc. v. City of Grenada,* 722 So. 2d 1283, 1285 (Miss. Ct. App. 1998). A contract must appear in the official minutes of the municipality in order to be enforceable against the municipality. *See Bruner v. Univ. of S. Mississippi,* 501 So. 2d 1113, 1115 (Miss. 1987). Plaintiff's argument that the Court should bind the City because of Burlison's alleged statement fails for this reason. Even assuming that Burlison made the statement Plaintiff attributes to her, she had no authority to form a contract with Plaintiff which altered the terms of the City's health insurance plan.

Plaintiff signed a form when he added Ava to his insurance policy in 2003, and warranted that "all statements made herein are complete and true." Request for Change Form [36-4], Ex. 3 to CSC Hearing Tr. [36-3]. He affirmed that he "underst[ood] the coverage applied for is subject to all exclusions and limitations set forth in the Benefit Plan . . . ." *Id.* By his signature, Plaintiff acknowledged that he understood the plan, including the provision that only spouses who were legally married to City employees could be added. Plan Document [36-4] at p. 4. He also

17

represented by his signature that he was aware of the provision on the first page of the plan document, which provided that "[n]o oral interpretations can change this Plan." *Id.* at p. 1.   To the extent that Plaintiff claims he relied on Burlison's alleged representation, such reliance was unjustifiable and unreasonable as a matter of law.  Plaintiff's estoppel and implied contract claims should likewise be dismissed.

C.      Plaintiff's Motion for Summary Judgment

Defendant filed seven counterclaims against Plaintiff, alleging: (1) fraud; (2) fraudulent inducement; (3) breach of contract; (4) tortious breach of contract; (5) breach of duty of good faith and fair dealing; (6) unjust enrichment; and (7) negligence.  Defs.' Answer and Countercls. [8] at pp. 4-9.  Plaintiff has filed a Motion for Summary Judgment [36], requesting that the counterclaims be dismissed.  He argues that there is no competent evidence that he committed fraud, made misrepresentations, or committed any other wrongdoing.  Pl.'s Mem. in Supp. of Summ. J. [37] at p. 8; Pl.'s Reply [45] at p. 4.  Plaintiff has only offered briefing on his fraud and fraudulent inducement claims.  Based on the record, Plaintiff has not carried his initial summary judgment burden of demonstrating that there are no material fact questions, or that he is entitled to judgment as a matter of law on Defendants' counterclaims.  The Court finds that Defendants have presented significant probative evidence to support their counterclaims.  Plaintiff's Motion should be denied, and Defendants' counterclaims should proceed to trial.

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment [34] should be granted, and Plaintiff's Motion for Summary Judgment [36] should be denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [34] of Defendants the City of Gautier, Mississippi, its Mayor Tommy Fortenberry, and former City Manager, Sidney Runnels is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the Motion for Summary Judgment [36] of Plaintiff Michael Gray is **DENIED.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Plaintiff's claims against Defendants are dismissed with prejudice.

**SO ORDERED AND ADJUDGED**, this the 7th day of September, 2012.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE